UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Ramon Santiago, | : | Case No. 4:08CV1965 |
| | : | |
| Plaintiff | : | Judge Ann Aldrich |
| | : | |
| v. | : | Magistrate Judge David S. Perelman |
| | : | |
| Commissioner of Social Security, | : | **REPORT AND RECOMMENDED** |
| | : | **DECISION** |
| Defendant | : | |

This action pursuant to 42 U.S.C. §405(g)seeking judicial review of defendant's final determination denying plaintiff's claim for disability benefits, 42 U.S.C. §§416(i), 423, is pending decision upon the parties' submissions on the merits, pursuant to which plaintiff seeks entry of final judgment in his favor, alternatively, an order of remand, and defendant seeks final judgment upholding the decision below.

Plaintiff applied for benefits on July 19, 2005, alleging an onset date of May 1, 2005. In an accompanying Disability Report - Adult the questions "What are the illnesses, injuries or conditions that limit your ability to work?" and "How do your illnesses, injuries or conditions limit your ability to work?" were answered "Depression and aids" and "I can't focus and nervous-crying."

Upon denial of plaintiff's claim on the state agency level hearing de novo before an Administrative Law Judge (hereinafter ALJ) was requested. Evidentiary hearing, at which plaintiff

was represented by counsel, was held on June 20, 2008.[1] Also testifying at that proceeding was a vocational expert, Mr. Gene Burkhammer.

When asked by the ALJ why he had left a company in Illinois where he had worked for twenty-five or twenty-six years the plaintiff testified:

> A. My wife she have a lot of health conditions. I was losing my house. They were going to repossess my house. So my wife from Youngstown, she was born and raised here, and the family told them, you know, that over there that it was a better place to live, you know, because of the economy. Everything was cheaper.
>
> Q. Have you tired to find other jobs?
>
> A. No, I could not. No. Because my wife just very sick, very ill, too.
>
> Q. Do you take care of your wife?
>
> A. My wife and I help her take care of the kids, too.
>
> Q. What do you mean by you take care of them?
>
> A. You know, like just to watch the kids, too, you know, because my daughter work so that I have my wife like sweep, do the dishes.
>
> Q. What other things do you do at home?
>
> A. Well, like, you know, sweep, do the dishes.
>
> Q. Do you do yard work?
>
> A. My granddaughter help me.
>
> Q. Helps you do what, mow the lawn?

---

[1] The fact that there was almost a three year gap between the filing of the plaintiff's claim to the holding of the de novo hearing is distressing to this Court. This Court also notes that defendant's brief incorrectly states the hearing date as June 26, 2008.

      A.  Yeah.

When asked why he can't work the plaintiff responded "I don't know. I get so much depress, you know. I get like fatigue, the asthma. I get very nervous. Sometime I forgets things that I do. And if I start something I never finish it." He attributed the fatigue to the fact that he is HIV positive. The only other physical limitations the plaintiff mentioned were pain in a knee upon bending and occasional headaches.

    On June 26, 2008 the ALJ entered his opinion denying plaintiff's claim. That decision became defendant's final determination upon denial of review by the Appeals Council on July 28, 2008. The ALJ's "Findings of Fact and Conclusions of Law" were:

    1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

    2.    The claimant has not engaged in substantial gainful activity since May 1, 2005, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

    3.    The claimant has the following severe impairments: Acquired immunodeficiency syndrome, depression, and asthma (20 CFR 404.1520(c)).

    4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

    5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except lifting and/or carrying no more than 20 pounds occasionally and no more than ten pounds frequently; standing and/or walking no more than six hours in an eight-hour workday; and sitting no more than six hours in an eight-hour workday (exertional). In addition, the claimant is limited to climbing, balancing, stooping, kneeling, crouching, and crawling no more than occasionally. He also must avoid work with smoke, fumes, hazardous

> machinery, and heights.  The claimant is limited to work that involves understanding, remembering, and carrying out no more than simple instructions.  He is also limited to no more than occasional interaction with co-workers and supervisors and is restricted from interaction with the public altogether (non-exertional).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on March 23, 1957 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  The claimant attained age 50 on March 22, 2007 which is defined as a person closely approaching advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2005 though the date of this decision (20 CFR 404.1520(g)).

The standards which control on a review of this nature were summarized by the Sixth Circuit in Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) as follows:

> Judicial review of the Secretary's decision is limited in scope to determining whether the findings of fact made by the Secretary are supported by substantial evidence and deciding whether the Secretary employed the proper legal criteria in reaching her conclusion, Walston v. Gardner, 381 F.2d 580, 585 (6th Cir. 1967).  This Court may not try the case de novo, nor resolve conflicts in evidence, nor

4

> decide questions of credibility, Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972). Rather "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. §405(g).
>
> The Supreme Court has stated that "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantiality of the evidence must be based upon the record taken as a whole. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980), citing Futernick v. Richardson, 484 F.2d 647 (6th Cir. 1973). "Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the `substantiality of evidence must take into account whatever in the record fairly detracts from its weight'." Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978), quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474 (1951). "We may not focus and base our decision entirely on a single piece of evidence, and disregard other pertinent evidence." Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir. 1978).

In resolving the issue of whether the defendant's final determination is supported by substantial evidence the decision upon judicial review cannot turn upon whether the reviewing court agrees with the Secretary's determination. Indeed, the reviewing court may conclude that substantial evidence would support a final determination contrary to that arrived at by the defendant and yet be obliged to affirm the defendant's final determination. In Mullen v. Bowen, 800 F.2d 535, at 545 (6th Cir. 1986), the court cited with approval the following from Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984):

> The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposition decision.

To the extent that this Court is able to make sense out of plaintiff's counsel's claims of error, they turn upon two questions put to the vocational expert, one by the ALJ and the other by counsel.

5

The question posed by the ALJ and the vocational expert's answer were:

> Q. Thank you. Now I want you to assume the same limitations described in the first hypothetical except with respect to mental limitations. I'm adding the limitation of the person requiring close supervision, which I will define as the need for frequent to constant intervention on the part of a manager, supervisor, or foreman, to ensure that he mains on task and completes those tasks to industry standards. With that addition limitation, would there be any jobs for such a person in the national, regional, or local economy?
>
> A. No, there would not, Your Honor.

However, to understand and appreciate the foregoing it must be viewed in the context of what preceded it, that being:

> Q. I want you to assume an individual of the same age as the Claimant, currently 51, the same education and work experience. Assume that such a person could lift and/or carry 20 pounds occasionally, 10 pounds frequently, stand and/or walk for six hours of an eight-hour day, sit for six hours, but was occasionally limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling, avoid all smoke and fumes as well as hazardous machinery and heights. Such a person is also limited to understanding and remembering and carrying out simple instructions only, is to have only occasional interaction with co-workers and supervisors and no interaction with the public. Would there be any unskilled occupations that such a person could perform in the national, regional, and local economies?
>
> A. Give me one moment, Your Honor. Yes, there would be.
>
> Q. Could you give me three of them?
>
> A. Okay. At the light level exertion, SVP 2, housekeeping cleaner, DOT code is 323.687-014, there are approximately 2,000 jobs in the local economy, 10,000 in Ohio and 200,000 nationally. Another would be small products assembler, again, light in exertion, SVP 2, DOT code 739.687-030, there are approximately 3,000 in the local economy, 25,000 in Ohio, 400,000 nationally. Another would be, again, at the light level, SVP 2, automatic car wash attendant, DOT code 915.667-010, 600 jobs in the local economy, 3,000 in Ohio, and 80,000

nationally.

The ALJ's line of inquiry was followed by plaintiff's counsel's examination of the vocational expert:

> Q. Mr. Burkhammer, if we kept the Judge's hypothetical number one the same--
>
> A. Uh-huh.
>
> Q. --and if we added to it the following limitations all of which are moderate limitations, if that hypothetical individual had moderate limitations in social functioning, moderate limitations in—with difficulties in maintaining concentration, persistence, and pace and if moderate limitations meant more than 25 percent of the time, would that hypothetical individual be able to perform any of the jobs that you've given us?
>
> A. What--how does the 25 percent translate into the job performance?
>
> Q. It would be more than one hour out of an eight-hour day where that hypothetical individual would need some sort of accommodation by the employer.
> A. If he needed one-hour accommodation throughout the day, that would eliminate the jobs.
>
> Q. And one additional hypothetical.  If we again kept the Judge's hypothetical number one the same and had moderate limitations in these categories and some of them may be repetitive, I'm trying to keep them as tight as possible, the ability to maintain attention and concentration for extended periods, the ability to work in coordination or proximity to others without distracting them or being distracted by them, the ability to complete a normal workday and work week without interruptions from psychologically based symptoms, moderately limited in the ability to perform at a consistent pace without an unreasonable number and length of rest periods, moderate limitations in the interactions with the general public, and moderate limitations in the ability to respond appropriately to changes in the work setting, would---first of all, would any one of those moderate limitations preclude him doing the types of jobs you gave us?

> A. Moderate limitations do not transfer adequately to vocational parameters. I need time lines and--
>
> Q. Oh, I'm sorry.
>
> A. --amount---a percentage of time off the job and so forth.
>
> Q. Okay. I was--the same assumption as before--
>
> A. Okay.
>
> Q. --up to one hour in a day that which it'd be, I guess, 12-and-a-half percent of the day as opposed to 25 percent. If--would any one of them preclude the types of jobs that you've given us?
>
> A. Yes.
>
> Q. Okay. Would they all in combination preclude the types of jobs you've given us?
>
> A. I'm not sure about all in combination but there are certain ones on there if he's off task or unable to focus and concentrate for an hour a day, that would eliminate his ability to function in the workforce.
>
> Q. And if we combined my additional assumptions given to you with moderate restrictions to the Judge's hypothetical number two, that is, requiring close supervision, as he defined it, am I correct in assuming he still would not be able to perform any jobs in the national economy?
>
> A. Yes, yes. The close supervision by itself was enough to eliminate those jobs so anything additional would definitely do it, too.

Predicated upon the foregoing, plaintiff's brief concludes with:

> Was the A.L.J.'s hypothetical No. 2 supported by the Record, i.e. the need for close supervision?
>
> It is as the assumption would be that the A.L.J. would not ask a hypothetical question that would not be supported by the Record. This is particularly true when, in his own decision, the A.L.J. did not even discuss, nor denigrate, his own hypothetical question and the

8

>answer by the V.E. thereto.
>
>Were Counsel's hypothetical No. 1 and 2 supported by the Record?
>
>It is respectfully submitted that they are, specifically No. 2.
>
>All of the factors contained in counsel's hypothetical question No. 2 are contained in the Mental Residual Functional Capacity Assessment completed by the State Agency Medical Consultant (R. 253-55). Each factor is contained therein.

The shortcomings in these arguments is that they appear to be based upon a state of the record that counsel wishes existed, rather than upon the facts as found by the ALJ.

The ALJ did not find that the plaintiff would require close supervision if he was to be employed. Rather, as set out in Section 5 of his "Findings of Fact and Conclusions of Law" the ALJ held that the plaintiff could perform work requiring no more than simple instructions and "no more than occasional interaction with co-workers and supervisors." The fact that the ALJ saw fit to ask an alternate hypothetical question positing the need for close supervision does not negate the limitations that he actually found.

As regards the Mental Residual Capacity Assessment form completed by the state agency psychologist, it is true that she found the plaintiff "moderately limited" in seven of the twenty elements set out therein. However, that form does not define what that term connotes, and it appears that the degree of limitation read into it by counsel in his hypothetical was of his own creation. Equally important is that the form concludes with a section headed "Functional Capacity Assessment" which carries the instruction "Record the elaborations on the preceding capacities in this section. Complete this section ONLY after the SUMMARY Conclusions section has been completed. Explain your summary conclusions in narrative form. Include only information which clarifies limitation or function. Be especially careful to explain conclusions that differ from those

of treating medical sources or from the individual's allegations." In completing that section the state agency psychologist stated:

> Cognitive functioning is estimated to be at least low avg. Concentration and persistence are variable due to the clmt's depression and preoccupation with somatic symptoms. He appears to be socially isolated and may not work well with the public. He would need a slow paced work environment without strict productivity demands.
>
> Due to clt's difficulties with depression and social interaction, clt would perform better in a routine and predictable environment with minimal social interaction and one to two step instructions to make simple work related decisions.

The record contains notes from the plaintiff's therapist for the period July 13-November 30, 2005, covering twelve sessions for which the therapist entered GAF ratings. For six of those the ratings were 61 or above, connoting only "some mild symptoms," while three others were sixty, the upper limit of "moderate symptoms."

Finally, as noted by the ALJ, the plaintiff acknowledged that he left his job in Illinois and came to Ohio voluntarily because of financial pressures and "not due to his impairments but because he had to take care of his ill wife."

This Court concluding that the ALJ's decision was clearly within his zone of choice and that the arguments made on this appeal are devoid of merit, it is recommended that final judgment be entered in the defendant's favor.

s/DAVID S. PERELMAN
United States Magistrate Judge

DATE:   August 3, 2009

## OBJECTIONS

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).